IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DENISE L. PORTIS,** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) CIVIL ACTION 07-0557-WS-C |
| | ) |
| **WAL-MART STORES, INC.,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

### ORDER

This matter comes before the Court on defendants' Motion for Summary Judgment (doc. 40). The Motion has been briefed and is ripe for disposition at this time.

**I.    Background.**

   *A.    Relevant Facts.*[1]

The underlying facts of this case are straightforward, and are largely uncontroverted. On the afternoon of August 1, 2005, plaintiff Denise L. Portis went shopping with her adult daughter, nonparty Renee Walker,[2] at a Wal-Mart SuperCenter in Mobile, Alabama. (Portis Dep., at 26.) The purpose of this excursion was to purchase bedding for Walker "to spruce up her bedroom." (*Id.* at 27.) Portis and Walker went to the store's bedding department and began perusing the merchandise, specifically bedspreads and sheets. At one point while Portis was looking at the sheets in a particular aisle, Walker went to the adjacent aisle to examine other merchandise. (*Id.* at 28; Walker Aff., ¶ 3.) As she stood in the adjacent aisle, Walker saw a Wal-Mart sales associate (later determined to be Alice Kearse) assisting another customer in the

---

   [1]    The Court is mindful of its obligation under Rule 56 to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007). Thus, plaintiffs' evidence is taken as true and all justifiable inferences are drawn in their favor.

   [2]    The summary judgment record suggests that Portis's daughter got married and moved to Ohio sometime after these events occurred. (Portis Dep., at 27.) It is unclear whether her surname changed thereafter, or by what surname she was known as of the date of the incident. This witness is now known as Renee Walker and, for the sake of clarity, will be referred to herein exclusively as "Walker."

aisle where Walker was. (Walker Aff., ¶ 4.)

These mundane circumstances transformed into the basis for this federal lawsuit in the blink of an eye. In Portis's words, she was looking at some bedsheets directly in front of her when, "all of a sudden, ... something started hitting me from behind. And I grabbed hold of the carriage ... and then I screamed because I didn't ... know what it was. When I turned around it was these bags of comforters, beds in a bag, you know, were on the ground behind me." (Portis Dep., at 28.) Portis's scream (or "yelp," as Walker described it) prompted Walker and Kearse to rush to Portis's aid. (*Id.*; Walker Aff., ¶¶ 6-7.) Both Walker and Kearse were in such close physical proximity to Portis (albeit one aisle over) that each of them could hear the accident as it occurred, with Walker hearing her mother cry out and Kearse hearing the comforters hit the floor. (Kearse Dep., at 21; Walker Aff., ¶ 6.) Walker immediately observed her mother in a dazed condition, with 10 to 12 bags of comforters surrounding her on the floor. (Walker Aff., ¶ 8.)[3]

What had happened was that the comforters had fallen from the location where they had been stacked on a riser atop a shelf behind Portis, striking her on the back of the head and neck. (Portis Dep., at 31, 33; Walker Aff., ¶ 10.) The riser where the comforters had been stored was above Portis's reach (Portis stands 5'2"), and at least six feet high. (Portis Dep., at 72-73.)[4] To reach the comforters where they were stacked, Portis would have had to climb on the bottom shelf and reach up. (*Id.*) At the time of the accident, however, Portis was not reaching for the comforters, but was facing the other direction looking at sheets. Portis did not know why the comforters fell. (*Id.* at 33.) Kearse was in the next aisle over, abutting the other side of that same shelf from which the comforters fell, and did not observe anything from her vantage point

---

[3]   Although not directly relevant to the issues presented on summary judgment, the record reflects that Portis was not knocked to the ground and that she did not lose consciousness during the incident, but that she felt "a little wobbly" and "felt a little tingling" in her shoulders. (Portis Dep., at 35, 37.)

[4]   The comforters themselves were packaged in plastic bags, rather than boxes. (Walker Aff., ¶ 13; McKinstry Dep., at 27.) Those packages do not hold their form or stack flat in the same manner that boxes would, and their weight can shift. (McKinstry Dep., at 28-29.) There were no nettings, rails or other safety devices on the riser to hold the comforters in place or prevent them from falling. (Walker Aff., ¶ 12.)

that would have caused the comforters to fall.  (Kearse Dep., at 24.)  However, when Kearse heard the accident and rushed over to Portis's aisle, she saw a gap in the area on the riser where the comforters were stacked, suggesting that items had fallen from that location, thereby creating the gap.  (*Id.* at 26, 40.)  Walker also looked up and saw the remaining comforters stacked three or four high on the riser, and not stacked flat. (Walker Aff., ¶ 9.)[5]

Upon arriving at the scene, Kearse asked Portis how she was feeling.  When Portis responded that she was "a little shaky," Kearse provided a chair for Portis to sit in and summoned a Wal-Mart manager to report the incident.  (Portis Dep., at 28; Kearse Dep., at 23-24.)  Before the manager arrived, however, Kearse had a conversation with Portis and Walker about the incident.  Walker stated to Kearse that the comforters appeared to be stacked in a dangerous manner, such that they could injure someone.  (Walker Aff., ¶ 11.)  Kearse's response was "that's the way the night crew does it, they shouldn't stack them like that."  (*Id.*)[6]

Wal-Mart offered evidence of a variety of safety procedures it had in place at the store where this incident occurred.  The record contains evidence of "bump tests" wherein Wal-Mart associates hit the shelves to see if any merchandise falls or shifts.  (Kearse Dep., at 39.)  There is no evidence, however, that Wal-Mart performed a bump test on the shelf after stacking the comforters that fell on Portis, or after those comforters fell on Portis to test the stability of the

---

[5] Accepting as true plaintiffs' evidence that the comforters were stacked three or four high, that arrangement was in contravention of Wal-Mart practice.  Kearse testified that she would never stack as many as three comforters on top of each other on the riser.  (Kearse Dep., at 39.)  And defendant Joey McKinstry, who was store manager at the time of the accident, testified that "our guidelines are basically – we stack it no more than two high or 24 inches," and that he had "not seen anybody stack them three or four or five high."  (McKinstry Dep., at 19, 22.)

[6] Walker's account of this conversation is consistent with Portis's deposition testimony on the subject.  In particular, Portis testified that while she did not recall the entire conversation, Portis knew that Kearse "did mention the possibility of the ... comforters not being, you know, stacked properly."  (Portis Dep., at 37-38.)  Kearse disputes having made any such statement. (Kearse Dep., at 41.)  For purposes of the pending motion for summary judgment, however, the Court must consider the record evidence in the light most favorable to plaintiffs, and cannot credit Kearse's testimony over that of Portis and Walker on this point.  There is clearly a genuine dispute of fact as to whether Kearse made statements to Portis and Walker concerning improper stacking of the comforters.

...

remaining comforters.[7]  There is also evidence of other Wal-Mart "safety techniques" bearing technical-sounding labels such as "zone defense" (in which Wal-Mart associates, among other things, look up and make sure the merchandise is stacked straight and stable on the riser) and "safety sweep" (in which Wal-Mart associates check their designated work areas for anything out of place or potentially dangerous).  (Lazarus Dep., at 55-56; Kearse Aff., ¶ 3.)  But Wal-Mart proffers no evidence that a zone defense or safety sweep was performed in the bedding area of the store in reasonable temporal proximity to Portis's accident on August 1, 2005.  Simply put, then, Wal-Mart comes forward with no evidence that these safety techniques were actually utilized with regard to the shelf and product involved in Portis's accident within a reasonable timeframe preceding same.[8]

### B.     *Procedural Posture.*

On October 26, 2007, plaintiffs Denise Portis ("Portis") and Montgomery Portis ("Mr. Portis") filed their First Amended Complaint (doc. 19) against defendants Wal-Mart and Joey McKinstry, the store manager at the time of the August 2005 accident.  The First Amended Complaint alleged that the accident caused Portis injuries to her head, neck, shoulders, arms, back and nerves; that she had endured mental anguish and physical pain; that she had undergone medical treatment; that she had suffered permanent damages; and that she had incurred medical expenses and lost wages.  Portis sought to recover from both defendants on theories of negligence (First Cause of Action) and wantonness/ recklessness (Second Cause of Action).  Mr. Portis (who is Portis's husband) alleged a claim (Third Cause of Action) against both defendants

---

[7]     Wal-Mart suggests in summary judgment briefing that it was store policy to perform a bump test whenever comforters were stocked.  But that assertion exaggerates the record evidence cited by defendant.  Indeed, the cited testimony was simply that "[y]ou can do a bump test" to check how secure the merchandise was, not that bump tests were always performed in that situation as a matter of store policy.  (Kearse Dep., at 39.)

[8]     Wal-Mart also asserts that it had signs posted that customers should not try to reach up to the top shelf to get merchandise, but should instead request assistance.  (Lazarus Dep., at 81.)  This evidence does not appear relevant.  There is neither evidence nor allegation by plaintiffs that the accident was caused by a customer reaching up to the top shelf to remove an item; to the contrary, the testimony by witnesses standing on both sides of the shelf where the comforters were stacked was that no one was reaching up high to remove product at the time of the accident.

for loss of the consortium and society of Portis as a proximate result of defendants' alleged negligence and wantonness.

At the close of discovery, defendants moved for summary judgment as to all of plaintiffs' claims. Plaintiffs have quite properly conceded that defendant McKinstry is entitled to judgment as a matter of law on all claims, and that Wal-Mart is likewise entitled to judgment as a matter of law on the recklessness/wantonness claim set forth as the Second Cause of Action. (Plaintiffs' Brief (doc. 46), at 1.) In accordance with plaintiffs' acknowledgment, the Motion for Summary Judgment will be **granted** as to those causes of action. The only remaining claims for consideration here, then, are Portis's claim against Wal-Mart for negligence and Mr. Portis's derivative cause of action for loss of consortium.

## II.     Summary Judgment Standard.

Summary judgment should be granted only if "there is no issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991). Once the moving party has satisfied its responsibility, the burden shifts to the nonmoving party to show the existence of a genuine issue of material fact. *Id.* "If the nonmoving party fails to make 'a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' the moving party is entitled to summary judgment." *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)) (footnote omitted). "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 999 (11th Cir. 1992) (internal citations and quotations omitted). However, the mere existence of any factual dispute will not necessarily compel denial of a motion for summary judgment; rather, only material factual disputes preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004).

## III.    Analysis.

The governing legal principles are well-settled. There can be no reasonable dispute that

Portis visited Wal-Mart on August 1, 2005 as a business invitee.  *See, e.g., Jones Food Co. v. Shipman*, 981 So.2d 355, 361 (Ala. 2006) ("Under Alabama law, a person invited onto another's premises for commercial purposes is an invitee."); *Browder v. Food Giant, Inc.*, 854 So.2d 594, 595 (Ala.Civ.App. 2002) ("When a person visits the premises for commercial purposes ... the person is an invitee.").  In this capacity, Wal-Mart was not an insurer or guarantor of Portis's safety; rather, it is liable for her injury only if it failed to use reasonable care in maintaining its premises in a reasonably safe condition.  *See Dolgencorp, Inc. v. Hall*, 890 So.2d 98, 101 (Ala. 2003).  In other words, Wal-Mart owed a duty to Portis only to "use reasonable care and diligence to keep the premises in a safe condition or, if the premises were in a dangerous condition, to give sufficient warning so that an invitee might avoid danger by the use of ordinary care."  *Fowler v. CEC Entertainment*, 921 So.2d 428, 432 (Ala.Civ.App. 2005).  Under Alabama law, "[n]o presumption of negligence arises from the mere fact of injury to the customer.  The burden rests upon the plaintiff to show that the injury was proximately caused by the negligence of the storekeeper or one of its servants or employees." *Dolgencorp*, 890 So.2d at 101 (citation omitted); *see also Ex parte Harold L. Martin Distributing Co.*, 769 So.2d 313, 314 (Ala. 2000) ("There is no presumption of negligence which arises from the mere fact of an injury to an invitee.") (citation omitted).

       The threshold question, then, is whether the Wal-Mart premises were in a dangerous condition.  Defendant urges the Court to answer this question negatively, reasoning that "no one can testify that the manner in which the comforters were on the shelf prior to the accident was in any way improper or negligent." (Defendants' Brief (doc. 42), at 6.)  But Walker did so testify, based not only on her own observations of how the remaining comforters were stacked immediately after the accident but also based on Kearse's statement to her that the night crew should not stack the comforters that way.  Additionally, Walker's testimony that plastic bags of bedding were stacked three or four high, on risers at least six feet off the ground, raises an inference of a dangerous condition, particularly given defense witness testimony that comforters should not be stacked more than two high on the risers.  Finally, a reasonable jury could find that stacking comforters three to four high in plastic bags that do not have completely flat or straight surfaces, all at a height of six to eight feet above floor level and directly over unsuspecting shoppers' heads, with no netting or other safety devices to prevent them from falling, is an

unsafe or dangerous condition.  Defendant is clearly not entitled to summary judgment on a lack-of-hazard theory.

The parties agree that to prevail on her negligence claim, Portis must show at least one of the following: (1) that Wal-Mart knew or should have known of the dangerous condition on the premises at the time of her injury; (2) that Wal-Mart created the defective condition; or (3) that Wal-Mart failed to perform reasonable inspection or maintenance of the premises to remedy the defective condition.  *See Edwards v. Intergraph Services Co.*, --- So.2d ----, 2008 WL 162245, *7 (Ala.Civ.App. Jan. 18, 2008).  At a minimum, the record on summary judgment demonstrates genuine issues of material fact as to the presence or absence of these first two scenarios.  First, there is ample record evidence that Wal-Mart knew or should have known that the comforters were stacked in a dangerous manner.  A Wal-Mart associate was standing in the immediate vicinity of the comforters in the moments before they fell.  Given Wal-Mart's "zone defense" and "security sweep" procedures as touted by defense witnesses, had defendant implemented those procedures it surely would have known that the comforters were stacked at an unsafe level inconsistent with store guidelines.  Moreover, Kearse's statement to Walker that "that's the way the night crew does it, they shouldn't stack them like that," reflects actual knowledge of the defective condition by Wal-Mart and suggests that it was a chronic defect created by the night crew's typical stocking practices.  Thus, there is absolutely a jury question as to whether Wal-Mart knew or should have known that the comforters were stacked in an unsafe manner prior to Portis's injury.  Second, there is record evidence (in the form of Walker's testimony concerning Kearse's statement) that Wal-Mart itself created the defective condition by improperly stacking the comforters in an unsafe manner.  Simply stated, this record, reviewed in the light most favorable to plaintiffs, clearly presents evidence from which a reasonable jury could find the requisite culpability on Wal-Mart's part to hold it liable for the injury to Portis on its premises.

In the alternative, Wal-Mart insists that proximate cause is lacking because no one actually knows why the comforters fell on Portis.  Although defendant theorizes that a customer may have rummaged through the comforters and destabilized them, there is record evidence to support a reasonable inference that no customer was touching, moving or reaching for the comforters before they fell on Portis.  Furthermore, if Wal-Mart knew or should have known of the dangerous condition (as a reasonable jury could find), then the requisite proximate causation

to support Portis's negligence claim could arise from Wal-Mart's failure to warn Portis of same. Thus, a reasonable finder of fact could conclude that Portis's injuries were proximately caused by Wal-Mart's failure to warn her of the dangerous condition, or to undertake reasonable measures to correct that defect on its premises. Finally, defendant's argument ignores the principle that in negligence cases under Alabama law, questions of proximate causation are normally reserved for the jury. *See Gooden v. City of Talladega*, 966 So.2d 232, 240 (Ala. 2007) (in a negligence case, question of proximate cause can be decided on summary judgment only if there is a total lack of evidence from which finder of fact may reasonably infer a direct causal relationship between the culpable conduct and the injury); *Gowens v. Tys. S. ex rel. Davis*, 948 So.2d 513, 530 (Ala. 2006) ("It is well established that the question of proximate cause is almost always a question of fact.") (citations omitted).

Clearly, there are substantial issues of material fact that preclude the entry of summary judgment in Wal-Mart's favor on Portis's negligence cause of action. That finding likewise bars entry of summary judgment for Wal-Mart on Mr. Portis's derivative claim for loss of services, given that the sole asserted basis for summary judgment on that claim is defendant's contention that there is no evidence of negligence.

**IV.   Conclusion.**

For all of the foregoing reasons, Defendants' Motion for Summary Judgment (doc. 40) is **granted in part**, and **denied in part**. The Motion is **granted** with respect to the following: (a) all claims against defendant Joey McKinstry; and (b) the wantonness/recklessness claim against Wal-Mart. Those claims are **dismissed with prejudice**. The Motion is **denied** with respect to plaintiff Denise Portis's negligence cause of action against Wal-Mart, and with respect to plaintiff Montgomery Portis's claim against Wal-Mart for loss of services. This action remains set for a Final Pretrial Conference before the undersigned on **July 23, 2008** at **10:00 a.m.**, with jury trial to follow in the **August 2008** civil term.

DONE and ORDERED this 1st day of July, 2008.

s/ WILLIAM H. STEELE  
UNITED STATES DISTRICT JUDGE