IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DENISE L. PORTIS,** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) CIVIL ACTION 07-0557-WS-C |
| | ) |
| **WAL-MART STORES EAST, L.P.,** | ) |
| | ) |
| **Defendant.** | ) |

**ORDER**

This matter comes before the Court on five Motions in Limine filed by defendant, styled as follows: Defendant Wal-Mart's Motions in Limine (doc. 53), Motion in Limine Regarding Plaintiffs' Daughter's Opinions (doc. 54), Motion in Limine Regarding Lost Wages (doc. 55), Motion in Limine Regarding Lost Future Wages (doc. 56), and Motion in Limine Regarding Medical Expenses (doc. 57). Plaintiffs have filed a Consolidated Reply (doc. 61) to these Motions, all of which are now ripe for disposition.[1]

**I.    Background.**

This action arises from an incident that occurred on August 1, 2005, at a Wal-Mart retail store in Mobile, Alabama. Plaintiff Denise Portis ("Portis") was shopping for bedding with her daughter, non-party Renee Walker, when 10-12 comforters packaged in plastic bags fell from a riser, striking Portis on her head, neck and/or shoulders. Portis maintains that as a result of this incident, she suffered permanent bodily injury, for which she underwent physical therapy and surgery. On that basis, Portis now pursues a cause of action against Wal-Mart for negligence, alleging that Wal-Mart failed to use reasonable care and diligence to maintain its premises in a

---

[1] Plaintiffs did not file their Reply in a timely manner, but did so six days after the deadline and only after prodding by the Court in the form of a Show Cause Order. Plaintiffs attribute their untimely response to an oversight of counsel. (Doc. 62.) In the absence of any prejudice to the opposing party, and given that plaintiffs' non-compliance with the briefing schedule was not willful, the Court will accept and consider plaintiffs' out-of-time response as filed.

safe condition and/or to warn her of any known dangerous condition.  Portis itemizes her damages as consisting of the following: (a) medical expenses of $27,698.97, including $21,032.79 in subrogated amounts owed to her medical insurer and $6,666.18 in out-of-pocket prescription and co-pay expenses; (b) past lost wages of $19,053.59; (c) future lost wages of $24,899.91; and (d) additional six-figure amounts for pain and suffering and permanent injury. Portis's husband, Montgomery Portis, has brought a derivative claim against Wal-Mart for loss of consortium, for which he also seeks a six-figure award.

## II.   Analysis.

### A.   *Motion in Limine Concerning Blow-ups, Excerpts, and Hearsay (doc. 53).*

Wal-Mart's first Motion in Limine is something of a catch-all request that delineates three prongs of relief sought.  First, defendant seeks to preclude plaintiffs from putting "blow-ups" of evidence before the jury unless such items have been admitted into evidence or agreed to by counsel.  Second, defendant seeks to bar plaintiffs from playing video deposition excerpts during opening statements or closing arguments.  Third, defendant seeks to exclude two specific documents on hearsay grounds, including a questionnaire completed by Portis's treating physician, Dr. Seldomridge, concerning her medical status as of February 2007, as well as a three-page letter by Dr. Seldomridge to plaintiffs' counsel dated May 2, 2007.

Plaintiffs' response reflects that defendant's concerns articulated in this Motion are illusory; indeed, the need for the Motion could have been obviated altogether had defense counsel ascertained plaintiffs' counsel's intentions on these matters before seeking relief from this Court.  With respect to the blow-ups, plaintiffs maintain that they do not intend to use any such exhibits that are not admitted into evidence.  The Court expects the parties to consult with each other in advance concerning any blow-ups or other demonstrative exhibits that either party intends to use at trial.  If opposing counsel has objections to a particular exhibit, those objections should be promptly presented to the Court in writing so that they may be considered in advance of trial.  Because there are no concrete objections and no specific exhibits at issue, the Court will not enter an across-the-board ban on the use of blow-ups at trial, nor will it speculate as to the propriety of any such items that any party may be intending to use.

As for the video deposition excerpts, plaintiffs state that they do not intend to play any video excerpts to the jury during opening statements or closing arguments.  As such, defendant's

concerns appear misplaced. The Court perceives no need to enter a ruling *in limine* to prohibit plaintiffs' counsel from doing something they do not intend to do.

Finally, plaintiffs' counsel are in agreement that the questionnaire and letter from Dr. Seldomridge appended to defendant's Motion as Exhibits A and B are hearsay and are cumulative of testimony Dr. Seldomridge will give via his video deposition. As the parties concur that these particular documents are inadmissible and as plaintiffs have no intent to introduce them into evidence at trial, no purpose would be served by entering an order forbidding them from doing so.

For all of these reasons, the Motion in Limine (doc. 53) is **denied** as unnecessary and speculative. To the extent that specific concerns arise regarding any of these topics before or during trial, nothing in this Order would preclude or in any way limit Wal-Mart from renewing or otherwise interposing appropriate objections at that time.

### B.   *Motion in Limine Concerning Opinions of Renee Walker (doc. 54).*

Defendant's second Motion in Limine seeks to exclude plaintiffs' daughter, Renee Walker, from offering opinions that the comforters were stacked in a dangerous manner, that the riser should have been designed differently, or that the comforters were not safely stackable. Wal-Mart's objections to such testimony are that Walker lacks experience in the field and knowledge of store policies and procedures, that she has not been identified as an expert, and that she cannot offer opinion testimony as to the ultimate issue.

Walker has not been deposed in this case; however, her Affidavit (doc. 54, Exh. B) prepared in connection with the summary judgment briefing provides a reasonable forecast of her anticipated trial testimony. In that Affidavit, Walker provides a narrative of the facts as she observed them first-hand on the date of the incident. The portions of Walker's narrative with which defendant takes issue in its Motion in Limine are apparently the following: (1) her comment to a Wal-Mart associate "that the way those things are stacked is dangerous and they could really hurt somebody"; (2) her observation that "[t]here was nothing on the riser to hold the comforters in place to prevent them from falling"; and (3) her assessment that "[t]he comforters that fell were in plastic bagging that was not safely stackable in such a way to insure that they would not fall." (Walker Aff., ¶¶ 11-13.)

Although defendant cites no authority for its Motion in Limine, the request is properly

considered by reference to Rules 701 and 704 of the Federal Rules of Evidence. Rule 701 provides that lay witnesses may testify in the form of "opinions or inferences which are (a) rationally based on the perception of the witness, (b) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." *Id.*; *see also Hall v. United Ins. Co. of America*, 367 F.3d 1255, 1259 (11th Cir. 2004) ("Rule 701 governs lay witness opinion testimony generally and dictates that such testimony must meet three requirements ...."). Rule 704 provides that, subject to an exception that is inapplicable here, "testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact." Rule 704, Fed.R.Evid.

Applying these Rules to the arguments raised in defendant's Motion, Wal-Mart's suggestion that Walker's opinion testimony is inadmissible because it relates to an ultimate issue of fact is contrary to Rule 704. This Court will not exclude Walker's testimony simply because it may concern ultimate issues of fact. *See, e.g., Hanson v. Waller*, 888 F.2d 806, 811 (11th Cir. 1989) ("The adoption of Rule 704 abolished the so-called 'ultimate issue rule' which proscribed opinion testimony that ostensibly invaded the province of the jury."); *United States v. Milton*, 555 F.2d 1198, 1203 (5th Cir. 1977) ("Rule 704 abolishes the per se rule against testimony regarding ultimate issues of fact."); *Allen v. City of New York*, 466 F. Supp.2d 545, 549 (S.D.N.Y. 2006) (witness "may properly give evidence stating a factual conclusion even if it embraces an ultimate issue to be decided by the jury") (citation omitted).[2]

---

[2] That said, Rule 704 did not alter the long-standing rule that witnesses cannot give opinions concerning legal conclusions (*i.e.*, ultimate issues of law) because it is the distinct and exclusive province of the court to instruct the jury as to the applicable law. *See, e.g., Nationwide Transport Finance v. Cass Information Systems, Inc.*, 523 F.3d 1051, 1058 (9th Cir. 2008) ("an expert witness cannot give an opinion as to her legal conclusion") (citation omitted); *Price v. Fox Entertainment Group, Inc.*, 499 F. Supp.2d 382, 387 (S.D.N.Y. 2007) (although witnesses may opine on issues of fact, they may not give testimony stating ultimate legal conclusions based on those facts). The Court perceives nothing in Walker's Affidavit, however, that would amount to an opinion concerning an ultimate legal conclusion (*i.e.*, that Wal-Mart was negligent), and Wal-Mart has not argued otherwise. As framed here, then, the "ultimate legal conclusion" restriction on opinion testimony appears to have no application to Walker's proposed testimony.

With respect to Walker's opinion that the comforters were stacked in a dangerous manner, the Court readily concludes that all elements of Rule 701 are satisfied. Walker was one of apparently just three witnesses (the others being Portis and Wal-Mart employee Alice Kearse) who saw how the remaining comforters were stacked on the riser in the moments after her mother's injury. Her characterization of the manner in which those comforters were stacked would obviously have a rational basis in her own perceptions, would unquestionably be helpful to the jury in understanding a fact in issue (to-wit, how were the comforters stacked at the time of the accident), and would not be based on scientific, technical or other specialized knowledge. The Court therefore finds that Walker may properly testify regarding her opinion that the comforters were stacked in a dangerous manner, pursuant to Rule 701.

Walker's opinion that the comforters are not "safely stackable" because they are packaged in plastic bags with no flat hard surfaces stands on a much different footing for Rule 701 purposes. Both parties' exhibit lists reflect that they intend to present to the jury exemplar comforters, presumably in their original plastic packaging. Given that the jury will be able to examine these comforters and their packaging themselves, they will be able to draw their own conclusions about whether the comforters (as packaged) are or are not "safely stackable." Whether Walker believes the comforters to be "safely stackable" or not would be of no help to the jury in understanding that issue, because there is no reason to believe that her perceptions concerning the stackability of comforters are any more reliable than the jurors' own perceptions on that front. There is no evidence, and no reason to believe, that Walker has any experience in stacking comforters or that she has any particular insights into which forms of retail inventory may be safely stacked and which may not. And the mere fact that Walker was present at the time of the accident and observed comforters in the Wal-Mart store that day lends her testimony concerning stackability no special imprimatur of authoritativeness, when the jurors will be able to examine those comforters themselves. For these reasons, the Motion in Limine is **granted** with respect to Walker's opinion that the comforters were not safely stackable, and that testimony will be **excluded** pursuant to Rule 701, Fed.R.Evid., as unhelpful to the jury in

reaching a clear understanding as to any fact in issue.[3]

Finally, with regard to defendant's objection to Walker offering any opinions concerning the safe design of a riser, nothing in Walker's Affidavit suggests that she intends to testify on that subject. Moreover, plaintiffs state that they have no intention of eliciting testimony from Walker that the riser should have been designed differently. At most, the Affidavit reflects that Walker might testify about the riser as she observed it to be, and the fact that the riser did not have any mechanism in place for preventing merchandise from falling. That is not opinion testimony at all, but instead is straightforward, relevant, clearly permissible testimony about the witness's observations at the scene on the date in question. Defendant's objection to such testimony is without merit.

For all of the foregoing reasons, the Motion in Limine Regarding Plaintiffs' Daughter's Opinions (doc. 54) is **granted in part**, and **denied in part**. The Motion is **granted** insofar as it relates to Walker's opinion that the comforters were not "safely stackable," and any such opinions from Walker concerning whether the packaging of the comforters rendered them difficult to stack safely is **excluded** pursuant to Rule 701, Fed.R.Evid. In all other respects, the Motion in Limine is **denied**.[4]

### C. *Motions in Limine Concerning Lost Past and Future Wages (docs. 55, 56).*

Defendant's next two motions in limine relate to Portis's claims for lost wages, and are styled Motion in Limine Regarding Lost Wages (doc. 55) and Motion in Limine Regarding Lost Future Wages (doc. 56). Given that plaintiffs have brought exclusively state-law causes of

---

[3] That said, the Court will revisit this ruling if testimony at trial reveals that the exemplar comforters listed in the parties' exhibit lists are not packaged in a substantially similar manner to the comforters involved in the August 1, 2005 incident. If the comforter packaging is not the same, then Walker's opinions concerning the stackability of the comforters she saw on the date of the incident may well be admissible under Rule 701 because the jurors would not be able to examine the August 2005 packaging themselves, such that her opinions on the subject may prove helpful to a clear understanding of a fact in issue.

[4] Of course, any opinion testimony that Walker may offer must be based on her own first-hand knowledge or observation. *See United States v. Mock*, 523 F.3d 1299, 1303 (11th Cir. 2008) (lay witness' opinion testimony was properly excluded where it was not based on first-hand knowledge). Defendant may renew its objection at trial to the extent that any opinion testimony by Walker elicited by plaintiffs is not based on her direct first-hand knowledge.

action and this Court's jurisdiction is grounded solely in diversity of citizenship, both Motions are evaluated by reference to Alabama's law of damages, not federal law.  *See, e.g., Hessen for Use and Benefit of Allstate Ins. Co. v. Jaguar Cars, Inc.*, 915 F.2d 641, 645 (11th Cir. 1990) (explaining that in diversity cases, the determination of damages constitutes a substantive issue for *Erie* purposes and is therefore governed by state law); *Complete Concepts, Ltd. v. General Handbag Corp.*, 880 F.2d 382, 389 (11th Cir. 1989) (similar).

Discovery documents submitted with the Motions reflect that Portis contends she has been unable to work on a full-time basis since the August 2005 injury, and that she claims past lost wages in the following amounts: $3,623.78 for 2007, $9,357.80 for 2006, and $4,002.21 for 2005.  Those same discovery documents reflect that Portis reached these figures by subtracting the amount she actually earned each year from $19,968.00, the amount she would have made had she worked full-time at her wage of $9.62 per hour.[5]  Portis further claims lost future wages "calculated @ $3,623.78/yr. for six(6) years through age 62 for a total of $21,742.68.  This amount has not yet been reduced to present value."  (Doc. 55, at Exh A #19; doc. 56, at Exh. A #19.)[6]  Wal-Mart has raised a panoply of objections to Portis's wage claims.

   *1.     Whether Expert Testimony is Needed to Reduce Lost Earnings to Post-Tax Value.*

In its first Motion concerning lost wages, Wal-Mart balks that plaintiffs' lost wage calculations "do not consider or account for the effect of state and federal taxes being withheld from Mrs. Portis's wages and, therefore, are inaccurate and excessive," such that any recovery in those amounts "would amount to a windfall for Plaintiff."  (Doc. 55, ¶ 2.)  Wal-Mart further protests that "Plaintiffs must put forth expert testimony regarding her net, after-tax lost wages

---

   [5]     Although not directly germane to these Motions, the Court observes that plaintiffs' calculations appear to suffer from a minor discrepancy, given that the $19,968.00 figure equates to 2,075.67 hours of work per year at $9.62/hour.  The Court is unaware of any evidentiary basis for equating 2,075.67 hours to full-time work, given that full-time earnings are traditionally calculated on the basis of 2,000 or perhaps 2,080 hours per year.

   [6]     For unknown reasons, defendant's Motions in Limine concerning lost wages recite only incomplete portions of plaintiffs' interrogatory responses, leaving blanks for 2007 lost wages and future lost wages even though no such omissions appear in the discovery responses appended to said Motions.

she would have earned but for the alleged incident," and that given their failure to do so, plaintiffs should be prohibited from submitting lost wage claims to the jury because of the unfair risk that the jury will speculate as to tax consequences. (*Id.*, ¶ 3.) But Wal-Mart identifies not a single authority for the proposition that Alabama law requires a jury award of lost wages to be reduced by the finder of fact to account for federal and state tax withholding. This Court will not perform movant's research for it. In any event, review of the leading treatise on Alabama's law of damages, as well as the relevant pattern jury instruction, does not disclose that Alabama courts have adopted such an approach. *See generally* Jenelle Mims Marsh & Charles W. Gamble, *Alabama Law of Damages* (5th ed. 2004); *Alabama Pattern Jury Instructions Civil* § 11.10. Furthermore, examination of the law in other jurisdictions reflects that a large majority of state courts do not reduce jury awards for lost earnings to account for taxes.[7] As one commentator explained, "The measure of damages for a wage loss is the gross amount of wages lost by the plaintiff, and thus income taxes, Social Security, retirement contributions or other withholdings may not be used to reduce the recovery." 2 Jacob A. Stein, *Stein on Personal Injury Damages* § 6:17 (3rd ed.).[8]

In the absence of any indication that Alabama courts would not adopt this majority rule,

---

[7] *See, e.g., Hicks ex rel. Saus v. Jones*, 617 S.E.2d 457, 464 (W.Va. 2005) ("in fixing damages for accrued loss of earnings or for impairment of future earning capacity because of personal injuries, the income tax consequences of the injury and the award should not be taken into consideration; on the contrary, the award of damages should be based upon the plaintiff's gross earnings or earning capacity") (citation omitted); *Smelser v. Univ. of Cincinnati*, 715 N.E.2d 627, 628 (Ohio Ct.Cl. 1999) ("In cases that do not involve the Federal Employer's Liability Act, it is not proper to deduct income tax from damages."); *Cornejo v. Probst*, 630 P.2d 1202, 1209 (Kan.App. 1981) ("it is improper for a jury to consider federal or state income taxes in making a damage award"); *Oddo v. Cardi*, 218 A.2d 373, 377 (R.I. 1966) ("the weight of authority appears to support the view that it is not proper to submit to a jury the question of the effect on such gross earnings of the federal income tax").

[8] The rule may differ for federal courts applying federal law. *See Culver v. Slater Boat Co.*, 722 F.2d 114 (5th Cir. 1983) (recognizing that calculation of lost income stream begins with gross earnings of injured party, to which fringe benefits and other incidental income are added, and from which fact finder should subtract required payments such as income tax and work expenses). But the substantive law of Alabama, not substantive federal law, applies to this diversity action.

and in the absence of any authority or persuasive reasoning from Wal-Mart in support of its position, the Court will not artificially constrain Portis's recovery of lost wages to post-tax earnings, nor will it oblige Portis to present expert testimony at trial concerning the impact of federal and state taxes on her lost earnings as a precondition to any award of same.[9]

>   *2. Whether Expert Testimony is Needed to Reduce Future Lost Earnings to Net Present Value.*

Defendant also objects to Portis's evidence of future lost earnings on the ground that "in order to recover for loss of future earnings/loss of future earning capacity, expert testimony is required to perform the calculation of such damages on an after-tax basis, reduced to present value." (Doc. 56, ¶ 3.)  Because plaintiffs have identified no expert witness to perform such present value calculations, Wal-Mart asks that Portis's evidence of future lost earnings be excluded because the jury cannot perform the requisite calculations without speculation.

As an initial matter, defendant is correct that under Alabama law future lost earnings must be reduced to present value.  Indeed, the requisite Alabama pattern jury instruction provides that a jury awarding lost future earnings must determine "first, the effect, if any, of his injury upon his future earnings, and second, the present cash value of any loss of future earnings which you are reasonably satisfied from the evidence in the case that plaintiff is reasonably certain to suffer in the future, as a proximate result of the injury in question.  'Present cash value' means the sum of money needed now, which, when added to what that sum may reasonably be expected to earn in the future, will equal such earnings at the time in the future when these earnings would have been received." *Alabama Pattern Jury Instructions Civil* § 11.11; *see also J.F.P. Offshore, Inc. v. Diamond*, 600 So.2d 1002, 1004 (Ala. 1992) ("The trial court correctly

---

[9] A contrary ruling might result in a windfall for defendant and prevent Portis from being made whole.  After all, whether any lost wages award that Portis might receive in this case is taxable or not is a matter between Portis and the federal and state taxing authorities.  If such a recovery is taxable, then one may rest assured that those taxing authorities will properly assess Portis's tax liability from the gross proceeds and require her to make good on same.  She will not receive a windfall.  By contrast, if Wal-Mart were permitted to reduce its exposure in this case by Portis's anticipated tax liability, then Wal-Mart would enjoy an undeserved benefit and Portis would be unfairly penalized, potentially even being subjected to double-reduction of the award for taxes if the award were reduced at trial to account for taxes and taxing authorities later assessed taxes on that same reduced award.

charged the jury that an award for future lost wages must be reduced to present value."); *Clark v. Container Corp. of America, Inc.*, 589 So.2d 184, 193-94 (Ala. 1991) (recognizing rule that "damages should be reduced to reflect only the present value of the plaintiff's decreased earning capacity") (citation omitted); Marsh & Gamble, *supra*, at § 36:4 (recognizing that Alabama courts have employed a "reduction to present value rule," thereby discounting an award of lost future earnings "by a reasonable rate of return that might be expected during the compensation period").

Two decades ago, the Alabama Supreme Court squarely answered the question of whether Alabama law requires a plaintiff to present expert testimony to reduce lost future earnings to present value. At that time, the Alabama high court declined "to hold the trial court in error for its refusing to require expert testimony on the mathematical procedure for reducing the loss of future earnings to present value." *Mullins v. Summers*, 485 So.2d 1126, 1130 (Ala. 1986). In so ruling, the *Mullins* court acknowledged that "[t]he involved process of reducing future losses to their present worth has, undoubtedly, led to confusion and guesswork verdicts," but nonetheless refused to require expert testimony based on its "apprehension ... to add one more layer of expert evidence to what ordinarily is already a complex trial ...." *Id.* The *Mullins* Court referred the issue to the Advisory Committee on Civil Rules of Practice and Procedure for further study, but nothing concrete seems to have come of that referral. The Alabama Supreme Court has never revisited the issue; therefore, to date *Mullins* appears to be the final word on the proof requirements for plaintiffs claiming lost future earnings. Inasmuch as Wal-Mart has submitted no legal basis for disregarding the *Mullins* rule, and inasmuch as *Mullins* appears to remain good law in Alabama today, the Court will apply that rule here.[10] Simply put, plaintiffs

---

[10]  The two cases cited by defendant in support of the proposition that a plaintiff seeking to recover lost future earnings must proffer expert testimony as to present value are inapposite. The first, *Baucom v. Sisco Stevedoring, LLC*, --- F. Supp.2d ----, 2008 WL 1994934, *8, 14-15 (S.D. Ala. May 5, 2008), was an admiralty action over which the undersigned presided. Alabama substantive law did not apply in *Baucom* and in any event, that decision is devoid of any pronouncements that expert testimony is a necessary precondition to any award of future lost earnings. At most, *Baucom* merely observed, without comment, that both parties had proffered expert witnesses to project the plaintiff's future lost wages on an after-tax basis and reduced to present value, and that both parties had <u>agreed</u> that this was the proper method for computation of lost earnings in that case. Defendant's position is not bolstered by *Baucom*. The

are not required by Alabama law to put on expert testimony instructing the jury on the mathematical procedure for reducing lost future earnings to present value.[11]  So, while Wal-Mart is entitled to an instruction directing the jury to determine the present cash value of any future lost earnings that it awards to Portis (assuming that defendant requests such an instruction), Alabama law does not forbid her from claiming future lost wages because she has failed to elicit expert testimony to guide the jury in performing that present value calculation.

> 3. *Whether Vocational Expert Testimony is Required to Establish Lost Earning Capacity.*

Defendant also seeks to exclude Portis's lost earnings claim on the basis that she has not come forward with a vocational expert to offer an opinion as to her loss of earning capacity. Again, Wal-Mart cites no authority for the proposition that expert testimony is required in such circumstances. Courts applying Alabama law have frequently permitted a plaintiff's claims of lost earning capacity to reach a jury even in the absence of expert testimony. *See, e.g., CSX Transp., Inc. v. Long*, 703 So.2d 892, 897-98 (Ala. 1996) (jury could properly award damages for lost earning capacity where plaintiff testified about his work history, earnings history, disability, and inability to find work on the open labor market, without expert testimony); Marsh & Gamble, *supra*, at § 36:4 n.6 ("the Alabama courts have often allowed the plaintiff to present loss of earning capacity without expert testimony"). "The line between those cases requiring

---

same is true of defendant's other cited case, *Seaboard System R.R., Inc. v. Keen*, 514 So.2d 1018 (Ala. 1987), an action under the Federal Employers Liability Act to which the Alabama Supreme Court applied federal substantive law without ever opining that expert testimony was required for purposes of reducing future lost earnings to present value.

[11]    Other jurisdictions have reached the same conclusion. *See, e.g., Brough v. Imperial Sterling Ltd.*, 297 F.3d 1172, 1180 (11th Cir. 2002) (applying Florida substantive law and concluding that "[t]here is no requirement, however, that a party introduce expert testimony to aid a jury in its determination of present value"). Once again, federal substantive law may be to the contrary, but it does not apply here. *See Schleier v. Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.*, 876 F.2d 174, 179 (D.C. Cir. 1989) (declaring that "in order for the jury to discount lost future wages to their present value, it needed expert guidance"); *but see Culver*, 722 F.2d at 122 (stating that parties may stipulate as to the below-market discount rate and any other disputed issue, or "may introduce expert opinion concerning the appropriate rate"); *J.F.P. Offshore*, 600 So.2d at 1005 (construing federal substantive law as "not mandat[ing] that expert testimony be introduced to determine present value").

expert testimony to correlate physical impairment with impaired capacity to earn and those falling within the common knowledge and experience of lay persons is a fine one, and must be drawn on a case-by-case basis." *Carnival Cruise Lines, Inc. v. Snoddy*, 457 So.2d 379, 383 (Ala. 1984); *see also Illinois Cent. Gulf R. Co. v. Russell*, 551 So.2d 960, 963 (Ala. 1989) (based on particular evidentiary showing by plaintiff concerning loss of earning capacity, "the facts sought to be proven are fairly and reasonably inferable from competent evidence adduced at trial and ... the inferences lie within the common knowledge of the jury in this case" where even in the absence of expert testimony the record was replete with logical inferences that plaintiff could lose future earnings as a result of his back injury); *Schleier v. Kaiser Foundation Health Plan of the Mid-Atlantic States, Inc.*, 876 F.2d 174, 178-79 (D.C. Cir. 1989) (lost future wages may be adequately established by plaintiff's testimony concerning work history, schooling, job and salary, and expert testimony is not required on these matters).

At this stage, the Court does not know precisely what plaintiffs' evidence will be concerning Portis's loss of earning capacity. Certainly, defendant has come forward with no proffer of evidence or argument warranting the summary exclusion of her lost earning capacity claims via Motion in Limine. Absent some showing that the case-by-case test articulated in *Snoddy* cannot be satisfied by Portis, the Court will not preclude her from putting on evidence of lost earning capacity; therefore, this aspect of the Motion in Limine is **denied**. That said, any lay evidence of lost earning capacity that Portis submits at trial will be evaluated to determine whether it constitutes competent evidence giving rise to reasonable inferences that she has lost and will lose earning capacity by virtue of the August 2005 incident. To the extent that her evidence is insufficient to satisfy her burden under *Snoddy*, the Court will hear any renewal of these arguments that Wal-Mart may choose to make at the close of plaintiffs' case in chief or at the conclusion of all evidence.

            4.        *Whether Additional Supplementation is Required.*

As a final objection to plaintiffs' evidence concerning lost wages, Wal-Mart complains that "Plaintiffs have not supplemented their disclosures or interrogatory answers with the alleged lost wages for 2007 or that portion of 2008 up to the time of trial." (Doc. 55, ¶ 4.) The first part of that statement is demonstrably incorrect, as Exhibit A to Wal-Mart's Motion is Portis's Responses to Interrogatories dated February 14, 2008, and includes lost earnings information

through the end of 2007, while also detailing claimed future earnings for 2008 and beyond. With respect to plaintiffs' alleged failure to supplement their responses with 2008 earnings, the Court does not believe that omission warrants exclusion of Portis's lost earnings evidence altogether. That said, Portis is **ordered**, on or before **August 8, 2008**, to provide defendant her most current earnings information for 2008 year-to-date, including a copy of her most recent pay stub to confirm her year-to-date earnings history.[12]

### D.   *Motion in Limine Concerning Medical Expenses (doc. 57).*

Wal-Mart's fifth Motion in Limine relates to plaintiffs' claims for medical expenses. As the Court understands the Motion, defendant seeks to exclude this category of damages, in whole or in part, on the following multifaceted grounds: (a) plaintiffs should not be allowed to submit all of their medical bills to the jury, inasmuch as the billed amounts exceed $60,000 but those amounts were marked down to approximately $20,000 pursuant to contractual relationships between the medical providers and Portis's insurance company, such that plaintiffs have no exposure or responsibility for the difference; (b) Portis's medical records from Physicians' Pain Specialists of Alabama should be excluded because plaintiffs have proffered no evidence that those amounts billed were reasonable, necessary or related to her August 2005 injury; (c) plaintiffs should be barred from asserting that Portis will require future medical care because there is no evidence to support such a claim; and (d) plaintiffs have failed to itemize their out-of-pocket medical expenses and to provide adequate documentation of same. Each objection will be considered in turn.

First, with regard to Portis's total medical bills, it is apparently undisputed that there is a large disparity between the charges billed by her medical providers and the insurance payments accepted by those medical providers in full satisfaction of those charges. If plaintiffs' insurer is subrogated only in the amount of approximately $20,000, and if plaintiffs are not legally

---

[12]   Defendant can hardly claim unfair surprise as to Portis's claimed lost income, given that her interrogatory responses delineate in detail her total lost earnings through the end of 2007 as well as her claimed future lost earnings as of February 14, 2008. The Court strongly suspects that plaintiffs would have promptly furnished updated earnings information to defendant, had only defense counsel made the request, rather than seeking judicial intervention via a Motion in Limine. Counsel should attempt to resolve such matters between themselves before rushing to court with a premature and likely unnecessary motion.

responsible for the remaining $40,000+ in amounts billed by Portis's medical providers, then there appears to be no valid basis for plaintiffs to present evidence to the jury of the total amounts billed when those charges are grossly disproportionate to the subrogated amount and do not represent recoverable damages. It is black-letter law that "damages for medical expenses are to be allowed only for doctor's and medical bills which the plaintiff has paid or has become obligated to pay." *Alabama Farm Bureau Mut. Cas. Ins. Co. v. Smelley*, 329 So.2d 544, 546 (Ala. 1976) (citation omitted). "The general rule is that damages are unrecoverable where the plaintiff has not paid or is not liable for such items." *Jones v. Crawford*, 361 So.2d 518, 521 (Ala. 1978). In the absence, then, of any evidence that plaintiffs are or may become liable for those medical bills in excess of the approximately $20,000 paid by Blue Cross/Blue Shield of Alabama, evidence of these excess charges is properly excluded. The Motion in Limine is **granted** in this respect.[13]

With regard to the Physicians' Pain Specialists of Alabama medical bills, plaintiffs have unhelpfully failed to respond to defendant's objection that there is no evidence linking these expenses and treatments to the August 2005 incident on which this lawsuit is based. Nonetheless, discussions in the July 23 Final Pretrial Conference revealed that plaintiffs believe they have evidence to support their position. Plaintiffs are **ordered**, on or before **August 8, 2008,** to apprise defendant of how, from an evidentiary standpoint, they intend to link the Physicians' Pain Specialists medical bills to Wal-Mart's alleged negligence, and how they intend to show that such expenses were reasonably necessary to Portis's treatment for that incident. If appropriate and if the parties are unable to resolve this issue, defendant may renew its Motion in

---

[13] In so finding, the Court rejects plaintiffs' argument that the medical bills in their entirety should be submitted to the jury "to show the extent and nature of the injury. A person who has undergone $30,000 worth of physical therapy, rather than $2,000 arguably suffered a more severe injury." (Plaintiffs' Reply (doc. 61), at 8.) Such an inference is questionable, at best. More importantly, plaintiffs can make the same point equally effectively, without the attendant risk of confusing the jury, by putting on evidence of the frequency and duration of Portis's physical therapy treatments. In short, to allow plaintiffs to present $60,000+ in medical bills to the jury for only $20,000 in losses would be to authorize the submission of evidence that is minimally probative, at best, and poses an unreasonable risk of wasting time and misleading and confusing the jury as to the total extent of medical expenses incurred by plaintiffs. This evidence is therefore inadmissible pursuant to Rule 403, Fed.R.Evid.

Limine as to this category of medical bills prior to trial. Defendant is cautioned that, absent citations to supporting authority that have not been provided to date, the Court will not exclude this category of medical expenses simply because plaintiffs lack expert testimony explaining the need for these treatments and their correlation to the August 2005 incident.

As for the future medical care issue, plaintiffs provide only the most cursory statement that "plaintiffs will seek recovery for future medical costs." (Reply (doc. 61), at 9.) Plaintiffs fail to elaborate what future medical costs are claimed and what evidence plaintiffs rely on in support of such medical costs. Moreover, the Joint Pretrial Document (doc. 58), which represents the final statement of claims and issues joined in this action, omits any reference to future medical expenses. As such, future medical expenses is not a category of damages that plaintiffs have properly joined for trial, and any evidence of same will be **excluded** at trial.

Finally, with respect to plaintiffs' out-of-pocket expenses, the Order on Pretrial Conference (doc. 63) entered by this Court requires plaintiffs to produce "any documents supporting Plaintiffs' claim for out-of-pocket medical expenses" on or before July 30, 2008. (Doc. 63, at 3.) To the extent that any objections remain concerning the adequacy of plaintiffs' evidence of the claimed out-of-pocket medical expenses (listed at $6,666.18 in the Joint Pretrial Document), the parties are **ordered** to consult with each other in good faith in an attempt to resolve those issues and to notify the Court promptly if those efforts prove unsuccessful.

### III.   Conclusion.

For all of the foregoing reasons, it is hereby **ordered** as follows:

1. Defendant's Motion in Limine (doc. 53) relating to blow-ups, video deposition excerpts and hearsay is **denied** as speculative and unnecessary, provided that nothing herein forecloses defendant from renewing these objections if appropriate during trial.
2. Defendant's Motion in Limine Concerning Opinions of Renee Walker (doc. 54) is **granted in part**, and **denied in part**. The Motion is **granted** insofar as it relates to Walker's proffered testimony that the comforter packages were not "safely stackable," and such testimony is **excluded** pursuant to Rule 701, Fed.R.Evid. In all other respects, the Motion is **denied**.

3. Defendant's Motions in Limine Concerning Lost Earnings (docs. 55 & 56) are **granted in part**, and **denied in part**. Plaintiffs are **ordered**, on or before **August 8, 2008**, to provide defendant with Portis's most current earnings information for 2008 year-to-date. In all other respects, the Motions are **denied**.

4. Defendant's Motion in Limine Concerning Medical Expenses (doc. 57) is **granted in part**, and **denied in part**. The Motion is **granted** insofar as it relates to plaintiffs' purported claim of future medical care, and all such evidence is **excluded**. Plaintiffs are **ordered**, on or before **July 30, 2008**, to provide defendants with itemization and back-up relating to all of their claimed out-of-pocket medical expenses. Plaintiffs are further **ordered**, on or before **August 8, 2008**, to apprise defendant of how plaintiffs intend to establish at trial that the Physicians' Pain Specialists medical bills are reasonably necessary and related to the underlying incident. To the extent that any disagreements about those particular items remain after such information is produced, the parties are **ordered** to consult in good faith to attempt to resolve those matters, and to notify the Court promptly if they are unable to do so. In all other respects, the Motion is **denied**.

DONE and ORDERED this 30th day of July, 2008.

s/ WILLIAM H. STEELE  
UNITED STATES DISTRICT JUDGE