**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **DENISE L. PORTIS,** *et al.*, | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION 07-0557-WS-C** |
| | ) | |
| **WAL-MART STORES EAST, L.P.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER**

This matter comes before the Court on numerous objections by defendant to plaintiffs'
designations of the deposition testimony of J.A. Alex Seldomridge, M.D., the treating orthopedic
surgeon for plaintiff Denise L. Portis following the accident that underlies this lawsuit.[1]
Defendant's objections, and plaintiffs' rebuttal to same, are set forth in the parties' Amended
Joint Pretrial Document (doc. 67).  For the sake of simplifying the analysis and minimizing
repetition, defendant's 36 stated objections to 17 passages culled from the 28 pages of deposition
testimony designated by plaintiffs will be grouped in several categories.[2]

---

[1]     The undersigned's practice is to carry most fact-based evidentiary objections to
trial so that the evidence can be examined in context.  However, it is not possible to do so with
respect to the testimony of Dr. Seldomridge.  The parties took his video trial deposition.  As the
parties agree that he is unavailable for trial, plaintiffs intend to play portions of that video to the
jury in lieu of live testimony from this witness.  Without an advance ruling on the objections,
plaintiffs will not be able to prepare a video that encompasses solely the admissible portions of
Dr. Seldomridge's testimony.

[2]     Defendant's approach of filing conclusory shotgun objections to numerous
aspects of Dr. Seldomridge's deposition is highly inefficient.  In many instances, the Court has
been left to guess the rationale of the objection from the particular "buzzword" that defendant
has used.  Moreover, the majority of these objections could and should have been addressed
during the deposition itself.  Both parties apparently knew that Dr. Seldomridge's deposition was
being taken for trial purposes.  Yet rather than asserting objections that might have allowed
plaintiffs' counsel to correct any technical infirmities in his questions or the witness's responses
to defendant's counsel's satisfaction, defendant's counsel instead elected to remain largely silent
and spring its objections on the eve of trial in hopes of carving out large swaths of Dr.
Seldomridge's testimony.  In addition to being unfair, such a tactic has resulted in the objections
consuming judicial and litigant resources that could have been readily conserved had defendant

A.      **Objections to Opinions Not Within a Reasonable Degree of Medical Certainty.**

No fewer than eight of defendant's objections to Dr. Seldomridge's deposition excerpts assert that his testimony consists of "opinions not within a reasonable degree of medical certainty."  Federal and state authorities are legion for the proposition that medical conclusions must be stated to a reasonable degree of medical certainty to be admissible.[3]  The parties appear not to dispute that the "reasonable degree of medical certainty" standard is the appropriate evidentiary yardstick by which Dr. Seldomridge's conclusions must be measured.

The deposition excerpts reflect that Dr. Seldomridge is a board-certified orthopedic surgeon who practices at Alabama Orthopedic Clinic.  (Seldomridge Dep., at 8.)  Those excerpts further reflect that Mrs. Portis was his patient from October 2005 through October 2006, and that he performed neck surgery (anterior cervical discectomy and fusion) on her in March 2006.  (*Id.* at 11, 19, 49.)  The specific opinions of Dr. Seldomridge to which defendant objects as being not stated with a reasonable degree of medical certainty include the following: (1) his opinion that Mrs. Portis's neck pain was not the result of degenerative changes because she could not have had that amount of pressure on her nerves prior to this accident and been asymptomatic; (2) his opinion that the disk bulges and protrusions pressing upon the nerve were not mere degenerative changes; (3) his opinion that some people with neck injuries and discectomies will experience continuing pain that they will have to live with; (4) his opinion that Mrs. Portis was experiencing

been more proactive.

---

[3]      *See, e.g., Allison v. McGhan Medical Corp.*, 184 F.3d 1300, 1320 (11th Cir. 1999) (in diversity case, applying Georgia rule that medical opinions must be expressed to a reasonable degree of medical or scientific certainty); *Bone v. Ames Taping Tool Systems, Inc.*, 179 F.3d 1080, 1082 n.1 (8th Cir. 1999) ("Many Missouri cases state that a medical expert's opinions must be expressed to a reasonable degree of medical certainty."); *Heller v. Shaw Industries, Inc.*, 167 F.3d 146, 153 n.4 (3rd Cir. 1999) (recognizing that in diversity cases state rules on degree of certainty required of expert opinions apply and that Pennsylvania allows doctors to opine on cause of illness only if they "can do so with a reasonable degree of medical certainty"); *Owens by Owens v. Bourns, Inc.*, 766 F.2d 145, 149-50 (4th Cir. 1985) ("Medical opinion evidence must express a reasonable degree of medical certainty that it was more likely that the defendant's negligence was the cause than any other cause for that evidence to be sufficient to go to the jury.") (citation omitted); *Brannan v. Northwest Permanente, P.C.*, 2006 WL 2818365, *1 (W.D. Wash. Sept. 28, 2006) ("an expert must testify to his or her conclusions to a reasonable degree of medical certainty") (citation omitted).

continuing pain as of the time of her last follow-up appointment with him; (5) his opinion that relatively light items like comforters can cause whiplash injuries; (6) his statement that he assigned a 28% impairment rating to the whole body of Mrs. Portis; (7) his statement that constant movement of Mrs. Portis's neck or even holding it still constantly could exacerbate her symptoms of pain; and (8) his opinion that a part-time work schedule with occasional pain medications would be appropriate for Mrs. Portis.

As to items (1) through (4), defendants' objection fails because after Dr. Seldomridge had articulated all of those opinions, he testified that he had formed them to a reasonable degree of medical certainty. (Seldomridge Dep., at 30-31.)[4] As to item (5), defendant's objection ignores the next two questions and answers in which Dr. Seldomridge specifically testified to his opinion "within a reasonable degree of medical certainty" that Mrs. Portis's injuries were caused by the objects falling on her head and neck. (*Id.* at 31-32.) Clearly, the threshold reliability requirement of Rule 702, Fed.R.Evid., is satisfied with respect to Dr. Seldomridge's causation opinions.[5] As to item (6), defendant's objection concerning medical certainty is misplaced

---

[4]      In particular, Dr. Seldomridge answered affirmatively when asked, "Doctor, have the opinions that you have expressed here today all been within a reasonable degree of medical certainty?" (Seldomridge Dep., at 30-31.) Defendant balks that this blanket response is inadequate, but offers no basis in the applicable rules or case law why that is so. Defendant complains that this "global question is improper and does not give defense counsel the opportunity to address specifics," but that assertion is incorrect. Plainly, defendant had a full and fair opportunity to cross-examine Dr. Seldomridge about any specifics it wished to explore. Taken as a whole, the deposition excerpts reflect that Dr. Seldomridge's testimony that Mrs. Portis's neck pain was not caused by degenerative problems, that her disk bulges and protrusions were not degenerative, that patients with symptoms and surgery similar to Mrs. Portis may experience continuing pain, and that Mrs. Portis was experiencing continuing pain when he last treated her were all opinions formed to a reasonable degree of medical certainty. That is sufficient to satisfy reliability thresholds of Rule 702, Fed.R.Evid. Had defense counsel wished to probe further the medical basis for each of those opinions and the degree of certainty attendant to same, he certainly could have done so on cross-examination.

[5]      *See generally Bland v. Verizon Wireless L.L.C.*, --- F.3d ----, 2008 WL 3474178, *3 (8th Cir. Aug. 14, 2008) (treating physician's opinions on causation are subject to ordinary standards of scientific reliability governing other expert opinions); *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090, 1105 n.14 (7th Cir. 1994) ("we do not distinguish the treating physician from other experts when the treating physician is offering expert testimony regarding causation"); *Knapp v. Wilkins*, 786 So.2d 457, 462 (Ala. 2000) ("A treating physician is

because Dr. Seldomridge was simply stating the fact that he had previously assigned a 28% impairment rating to Mrs. Portis.  He was not offering any medical opinions, but was simply testifying to what he had done; therefore, the "reasonable degree of medical certainty" test is inapplicable.  As to items (7) and (8), Dr. Seldomridge merely testified that Mrs. Portis's neck "could" hurt more if she moved it or held it in the same position constantly, and that this pain could appropriately be managed by reducing her work schedule and taking pain medication. These opinions concerning ongoing symptoms and pain management techniques are clearly not medical conclusions that must be stated to a reasonable degree of medical certainty.[6]

More globally, this line of objections is unavailing because it is predicated on the notion that a treating physician cannot testify about anything relating to the patient, the patient's symptoms, or the physician's recommendations without uttering the incantation "reasonable degree of medical certainty."  Defendant cites no authority that would require this kind of formalistic inclusion of a "reasonable degree of medical certainty" qualifier to each and every question posed to, and answer given by, a treating physician in a trial deposition.  The authorities examined by the Court have limited that standard to causation and similar conclusions reached by the physician, and have otherwise deemed physician testimony admissible if it comports with the baseline requirements of Rule 702.  Dr. Seldomridge clearly couched his medical conclusions in terms of "reasonable degree of medical certainty," and his other testimony falls neatly within the parameters of Rule 702; accordingly, these objections by defendant are **overruled**.

B.      **Objections to Improper/Incomplete Predicate/Foundation.**

Defendant's next category of objections relates to the alleged lack of predicate or foundation in Dr. Seldomridge's testimony.  Defendant invokes this objection in conclusory

---

competent to give his opinion of the cause of his patient's injuries.").

[6]      Indeed, it would be foolhardy to require a reasonable degree of medical certainty for such testimony about a treatment plan or about symptoms that a patient might experience. By their nature, these topics (unlike opinions concerning causation, for instance) cannot be discussed with precision.  There simply may be no possible medical certainty as to whether a patient will or won't have symptoms, or whether a given pain management regimen will or won't be efficacious.  Therefore, defendant would require a greater degree of precision for this type of testimony than is reasonably attainable.  Significantly, defendant offers no authority of any kind in support of these objections.

fashion on no fewer than eight occasions, with minimal explanatory verbiage.  This kind of cursory objection is difficult to evaluate without some amplification as to how defendant feels Dr. Seldomridge's testimony in each instance is deficient.  Moreover, the law is clear that whether a logical basis for an expert opinion "has been established is within the discretion of the trial judge and the weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility. ... On cross-examination, the opposing counsel is given the opportunity to ferret out the opinion's weaknesses to ensure the jury properly evaluates the testimony's weight and credibility."  *Jones v. Otis Elevator Co.*, 861 F.2d 655, 663 (11th Cir. 1988).[7]

As to Dr. Seldomridge's opinion that Mrs. Portis's condition was not the result of degenerative changes, the witness explained that based on examination of the patient, review of her x-rays and MRI, and review of her available records, he believed that she would have been symptomatic had she had that degree of pressure on her nerves prior to the Wal-Mart accident. The predicate/foundation for such an opinion is obviously not lacking.  With respect to his opinion that some people with neck injuries and surgeries like Mrs. Portis have to live with continuing pain, the predicate is Dr. Seldomridge's education, training and experience, as to all of which he had testified earlier.[8]  That is sufficient foundation to prevent his testimony on this point from being speculative or untrustworthy.  The objection that there is no foundation for Dr.

---

[7]     The rule is similar under Alabama evidentiary principles.  *See generally Millry Mill Co. v. Manuel*, --- So.2d ----, 2008 WL 615857, *8 (Ala.Civ.App. Mar. 7, 2008) ("[I]t is well settled that any challenge to the facts upon which an expert bases his opinion goes to the weight, rather than the admissibility, of the evidence.") (citation omitted).

[8]     To be sure, additional foundational questions could have been asked.  But given defense counsel's mere statement, "[o]bject to the form," at the deposition, plaintiff's counsel was not reasonably placed on notice that defendant was objecting for lack of foundation.  Had defense counsel specified that his objection went to foundation, plaintiffs' counsel might well have asked follow-up foundational questions at that time, sparing the parties and the Court from litigating this objection.  Trial depositions are not an exercise in secrecy and ambush.  If counsel believes that the questions posed on direct examination are flawed or incomplete, it must put opposing counsel on notice to afford that attorney a reasonable opportunity to cure.  In any event, as the Court has already stated, there is adequate foundation for Dr. Seldomridge's testimony about other patients' experiences given the evidence of his own education, training and experience in this medical specialty.

Seldomridge's opinion that Mrs. Portis will experience continued pain is obviously meritless, given the doctor's testimony that "[c]ertainly the last follow-up we had that was her status and that is what I found at that time." (Seldomridge Dep., at 30.) The predicate is clearly identified in the answer.

Defendant also faults the foundation in Dr. Seldomridge's statement that his opinions were within a reasonable degree of medical certainty. In particular, defendant decries the question for "not incorporat[ing] the basis of the opinions, e.g., training, education, experience, history, examination, etc." (Doc. 67, at 9.) But Dr. Seldomridge had previously testified about all of those things. The Court declines to mandate the overly formalistic phrasing urged by defendant, absent binding authority requiring same. If such were the law, each question would be unwieldy and impenetrable because it would have to recite expressly all of the witness's training, education, experience, history, examination and the like before getting to the question being asked. Taking this testimony in context, the foundation for Dr. Seldomridge's opinions is quite clear. If defendant had wished to follow up, it had every opportunity to do so on cross-examination.

As for Dr. Seldomridge's opinions concerning the cause of Mrs. Portis's injuries, the foundation is obvious. He treated her for injuries that were within his area of medical expertise. His opinions on causation are plainly based on his expertise and his treatment of Mrs. Portis, and plaintiffs' counsel's failure to utter "magic words" or to frame labyrinthine multipart questions expressly touching on every fact or circumstance on which Dr. Seldomridge relied in forming his opinions is not a valid ground for excluding the testimony.

With respect to Dr. Seldomridge's testimony concerning the 28% impairment rating he assigned to Mrs. Portis, the testimony as a whole reflects the sources of information he used in reaching that conclusion, the meaning of a permanent impairment rating, and the factors he considered. The transcript also shows that defendant's counsel cross-examined the witness at length concerning these matters. The foundation objection to this portion of the testimony is not well taken.

Finally, defendant's foundation/predicate objections to Dr. Seldomridge's recommendation that Mrs. Portis adopt a part-time work schedule and take pain medication are plainly based on his own observations and treatment of her through October 2006. Whatever

-6-

deficiencies these opinions may have, they are not inadmissible for want of foundation.

**C.      Other Objections.**

Aside from the lack of medical certainty and lack of foundation objections that constitute the bulk of defendant's attempts to exclude portions of Dr. Seldomridge's trial deposition testimony from being aired to the jury, defendant also proffers several other ancillary objections to particular excerpts.

*1.      Objections to Hearsay.*

Defendant contends that four portions of Dr. Seldomridge's testimony are inadmissible hearsay.  First, defendant objects generically on hearsay grounds to a lengthy passage in which Dr. Seldomridge discussed aspects of Mrs. Portis's medical history that she had reported to him. Such statements are admissible, as a matter of law.  "Generally, statements made for the purposes of medical diagnosis or treatment, including medical history, and a description of symptoms and pain, are admissible." *Turner v. White*, 443 F. Supp.2d 288, 297 (E.D.N.Y. 2005); *see also Moeller Tevez v. Allmerica Financial Life Ins. and Annuity Co.*, 534 F. Supp.2d 253, 261 (D.P.R. 2008) ("Information given to healthcare providers in the context of supplying medical treatment constitutes a hearsay exception.").  In light of this rule, as set forth in Rule 803(4), Fed.R.Evid., defendant's hearsay objections relating to any statements made by Mrs. Portis to Dr. Seldomridge for the purpose of treatment and diagnosis must fail.

Defendant's second hearsay objection concerns a passage in which Dr. Seldomridge outlined the risks attendant to the surgical procedure performed on Mrs. Portis.  While the question is worded in a manner that arguably calls for hearsay, Dr. Seldomridge did not frame his response in terms of what he told Mrs. Portis, but instead simply recounted the litany of risks that accompanied this procedure.  His testimony on this point is not hearsay.  Defendant also objects on hearsay grounds to Dr. Seldomridge's testimony that he told Mrs. Portis in October 2006 that from an orthopedic standpoint he could do nothing more for her.  But this testimony does not appear to be offered for the truth of the matter asserted (*i.e.*, that Dr. Seldomridge could do nothing more for Mrs. Portis), but instead to explain why Mrs. Portis stopped receiving treatment from Dr. Seldomridge after that date (*i.e.*, because he told her to stop).  Lastly, defendant objects on hearsay grounds to Dr. Seldomridge's statement that he assigned a 28% permanent impairment rating to Mrs. Portis.  This statement is not hearsay because Dr.

-7-

Seldomridge did not purport to be reading from or divulging the contents of a letter, but instead was simply describing what he did.

      **2.**       ***Speculation.***

Defendant also takes issue with certain aspects of Dr. Seldomridge's testimony on the grounds that it is speculative.  The law is clear, of course, that "where an expert's testimony amounts to no more than a mere guess or speculation, a court should exclude his testimony. ... But where the expert's testimony has a reasonable factual basis, a court should not exclude it.  Rather, it is for opposing counsel to inquire into the expert's factual basis."  *United States v. 0.161 Acres of Land*, 837 F.2d 1036, 1040 (11th Cir. 1988).[9]  Although speculative testimony is not admissible, "absolute certainty is not required."  *Jones*, 861 F.2d at 662.

Defendant objects to Dr. Seldomridge's description of his observations of Mrs. Portis's decisionmaking process for the surgery as speculative.  The testimony reveals otherwise.  The witness testified that Mrs. Portis had come in with a large group of family members, and again with her husband, in November 2005 to discuss the possibility of surgery; that he observed her to be weighing options and considering risks; and that she came to a decision in January 2006. (Seldomridge Dep., at 18-19.)  In so testifying, the physician was not speculating as to his patient's mental processes but was describing discussions in which he participated.  This is not speculation.  Defendant also contends that Dr. Seldomridge's testimony that some people with injuries and surgeries similar to Mrs. Portis have to live with continuing pain is speculative.  The Court disagrees.  The witness is in the profession of treating patients like Mrs. Portis, and can testify to what he has observed in those patients as a group based on his own experience.  This is not speculation.  Defendant also suggests that Dr. Seldomridge was speculating in assigning a 28% impairment rating to Mrs. Portis.  There was nothing speculative about it.  He examined her.  He treated her.  He could certainly testify based on personal knowledge about the

---

[9]     *See generally Millry Mill*, 2008 WL 615857, at \*8 (noting that "opinions of an expert witness may not rest on mere speculation and conjecture") (citation omitted); *Townsend v. General Motors Corp.*, 642 So.2d 411, 423 (Ala. 1994) ("A witness's testimony cannot be based on mere speculation and conjecture.") (citation omitted)

impairment rating he assigned to her as of the time he last treated her.[10]  This is not speculation.  Defendant further seeks to exclude as speculative Dr. Seldomridge's account of the continuing problems Mrs. Portis might have as a result of her neck condition.  But Dr. Seldomridge did not purport to be testifying that she definitely had those symptoms and problems today, but rather was testifying to problems that he would expect someone with Mrs. Portis's diagnosis to encounter, and to strategies (reduced work schedule, pain medications) that might be appropriate for managing those problems.  It is of course up to Mrs. Portis to testify about what her symptoms are today, and whether she has in fact adopted those pain management techniques.  Nothing in Dr. Seldomridge's testimony on this point is speculative.

> ### 3.    Repetition/Asked and Answered.

Defendant correctly points out that plaintiff has designated two passages of Dr. Seldomridge's deposition that contain substantively identical testimony concerning the cause of Mrs. Portis's injuries.  (Seldomridge Dep., at 31-32.)  Plaintiffs' counsel asked the question the same way twice and Dr. Seldomridge answered it the same way twice.  In fact, plaintiffs' counsel apologized to the witness for the redundancy before asking the question the second time.  (*Id.* at 32.)  Plaintiffs are entitled to present medical testimony concerning the cause of Mrs. Portis's injury.  They are not entitled to do it twice.  Tellingly, plaintiffs do not even attempt to respond to defendant's objection to this passage on repetitiveness grounds.  Accordingly, defendant's objection to Dr. Seldomridge's deposition transcript from line 22 of page 31 through line 12 of page 32 is **sustained**, and that passage will be excluded.

Defendant's second objection on grounds of repetition stands on a different footing.  On page 33 of the deposition, plaintiffs' counsel asked a slightly different causation question of Dr. Seldomridge, inquiring specifically as to whether the Wal-Mart injury was connected specifically to her neck pain, numbness in the arms and radicular symptoms.  That question is

---

[10]    Defendant's arguments appear to rest on the fact that Dr. Seldomridge treated Mrs. Portis for the last time in October 2006, some six months before he prepared the impairment rating.  This fact was developed on cross-examination and will no doubt be highlighted to the jury by defendant.  But that fact goes to the weight of the testimony, not its admissibility, where there is no indication that Dr. Seldomridge was purporting to offer opinions as to plaintiff's current medical status as of some date following his last examination of her.  *See* Seldomridge Dep., at 49 ("I don't have any knowledge after October 2006.").

sufficiently distinct from its predecessors that the Court will allow it.  This objection is **overruled**.

       *4.       Nonresponsiveness.*

       Continuing with its objections, defendant criticizes Dr. Seldomridge's responses to four questions as allegedly being nonresponsive.  Such objections should have been interposed at the deposition so that the examining counsel could have framed follow-up questions to which that testimony would have been responsive; however, defense counsel did not express any such objections to those excerpts during the deposition.  It is unfair and unreasonable to withhold objections relating to the form of a question or response, then spring them on opposing counsel long after the trial deposition has concluded, thereby depriving counsel of the opportunity to rectify any defects in form by framing queries to which the desired information would have been responsive.  Besides, the Court has examined the challenged questions and answers, and finds that Dr. Seldomridge's testimony in each instance was substantially responsive to the question posed.  This line of objections is **overruled**.

       *5.       Remaining Objections.*

       Finally, the Court considers a grab-bag of residual objections interposed by defendant. Defendant objects to Dr. Seldomridge's testimony about the experiences of patients with injuries and surgeries similar to Mrs. Portis as "not specific to the patient."  But the very next question ties those observations to Mrs. Portis.  (Seldomridge Dep., at 29.)  This exchange was not improper.  The Court is aware of no rule of evidence, and defendant has cited none, that would forbid a doctor from making general observations concerning the impact of particular types of injuries and surgeries on other patients before linking those observations specifically to the plaintiff.  This testimony will be allowed.

       Defendant also objects that a portion of Dr. Seldomridge's deposition improperly contains "vocational opinions."  (Doc. 67, at 10.)  The Court cannot agree.  A physician can recommend restrictions to a patient's work schedule without such recommendations constituting improper vocational opinions.  Moreover, a functional capacity examination is not an evidentiary prerequisite to a physician's ability to testify concerning limitations on a patient's ability to work.  This objection is unavailing.

       Defendant's 36th and final objection to Dr. Seldomridge's deposition concerns the

witness's testimony that he examined the AMA Guide to Evaluation of Permanent Impairment and used that text in assigning an impairment rating to Mrs. Portis.  Contrary to defendant's suggestion, this testimony does not recite the contents of a hearsay letter.  The timing of Dr. Seldomridge's evaluation of her permanent impairment rating relative to the last time he treated her goes to the weight of his testimony, rather than its admissibility.  And defendant's protestation that there is no testimony concerning the authoritativeness of the AMA Guide is a defect of defendant's own creation.  The objected-to passage occurred on cross-examination.  If defense counsel had wanted to ask Dr. Seldomridge about the authoritativeness of the AMA Guide, he could have done so.  Counsel cannot use his own omission to keep from the jury an excerpt of cross-examination that he conducted.

**D.    Conclusion.**

For all of the foregoing reasons, defendant's objections to the deposition testimony of Dr. Seldomridge are **overruled** in all respects but one.  The objection to redundancy is **sustained** as to the passage found from line 22 of page 31 to line 12 of page 32, and that passage is **excluded**.  All other designated excerpts of Dr. Seldomridge's testimony will be allowed.[11]

DONE and ORDERED this 22nd day of August, 2008.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

[11]    The Court also understands that defendant objects to two pages of the designated deposition testimony of Dr. Patton.  Plaintiffs have stated that they will read passages of Dr. Patton's deposition to the jury "if needed," so it is indeterminate whether plaintiffs actually intend to put the objected-to evidence before the jury.  Rather than rule on a hypothetical evidentiary dispute that may never come to fruition, the Court **carries to trial** defendant's objections to pages 47-49 of Dr. Patton's deposition.  Plaintiffs are **ordered** to notify the Court and opposing counsel promptly if a decision is made to utilize these portions of Dr. Patton's deposition, so that the objection can be ruled on in a seasonable manner in the context of trial.